1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| STEPHEN GOULD CORPORATION, | Case No.  2:22-cv-08347-WLH-AGR |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT BENJAMIN ZABARY (DOCKET NO. 81)** |
| v. | |
| SAM OSCEOLA; ENCORP SWITZERLAND AG; ENCORP USA; BENJAMIN ZABARY; NETHANEL SOLOMON; JUAN ENRIQUE GARCIA; AND LIANA FOKSHENEANU, | |
| Defendant. | |

12
13
14
15
16
17
18
19
20

Before the Court is Plaintiff Stephen Gould Corp.'s ("Plaintiff") Motion for

21

Default Judgment (the "Motion") against Defendant Benjamin Zabary ("Defendant").

22

(Mot. for Default Judgment, Docket No. 81).  Defendant did not file an opposition or

23

otherwise appear in this action.  On October 13, 2023, the Plaintiff submitted to the

24

Court's Tentative Order, which the Court now adopts as a final order.

25

For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part

26

Plaintiff's Request for Default Judgment and orders an award in the amount described

27

in further detail below.

28

## I.   BACKGROUND

On November 15, 2022, Plaintiff filed its Complaint alleging eight causes of action for breach of contract, unjust enrichment, conversion, alter ego liability, fraud and fraud in the inducement, negligent misrepresentation, intentional interference with economic relations, and civil conspiracy.  (Compl., Docket No. 1 ¶¶ 111–72).  In general, the Complaint alleges that Defendant and others fraudulently induced Plaintiff to pay in advance for nitrile gloves that were for the most part never delivered during the height of the COVID-19 pandemic when personal protective equipment shortages were prevalent.  (*See generally id.*).  This conduct interfered with Plaintiff's ability to satisfy its lucrative contract with its important client, Safelite Glass Corp. ("Safelite").  (*Id.* ¶ 3).

On January 19, 2023, Plaintiff served the summons and complaint on Defendant in Israel using a process server pursuant to the service requirements of the Hague Convention.  (*See* Declaration of Timothy W. Bucknell ("Bucknell Decl."), Docket No. 64 ¶ 3).  Defendant is an Israeli citizen and resident of Benyamina, Israel. (*See id.* ¶ 11).  Plaintiff filed proof of service with the Court on April 3, 2023.  (*See id.* at Exh. 1).

Defendant's answer was due on February 9, 2023.  Defendant has not appeared or answered as of the date of the issuance of this Order.  On April 7, 2023, Plaintiff filed a request for clerk to enter default against Defendant.  (Docket No. 64).  On June 15, 2023, the Court granted Plaintiff's Motion for Default.  (Docket No. 72).

On August 21, 2023, the Court issued an Order to Show Cause ("OSC") requiring Plaintiff to show cause in writing why this matter should not be dismissed for lack of prosecution as to Defendant Benjamin Zabary.  (Docket No. 77). Alternatively, the Court indicated that Plaintiff could file a Motion for Default Judgment.  (*Id.*).

On September 1, 2023, Plaintiff filed its first Motion for Default Judgment (Docket No. 79), which was stricken on September 8, 2023, (Docket No. 80) for

1    failing to adhere to the Local Rules and/or Court's Standard Order.  On September 15,

2    2023, Plaintiff filed the instant Motion seeking a total award of $851,416.44, which

3    includes a principal amount of $674,115.00 plus prejudgment interest in the amount of

4    $177,301.44 ($184.6890/day as of September 15, 2023). (Decl. of Kyle Kveton

5    ("Kveton Decl."), Docket No. 81 ¶ 6).

6    **II.   LEGAL STANDARD**

7          After an entry of default, a party seeking judgment may request the Clerk of

8    Court enter default judgment without a court hearing or judicial action if the claim is

9    for "a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P.

10   55(b)(1).   In all other cases, the plaintiff must apply to the court for a default

11   judgment.  Fed. R. Civ. P. 55(b)(2); *see also* L.R. 55-1.

12         The court has considerable discretion as to what it may require as a prerequisite

13   to the entry of a default judgment.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

14   917 (9th Cir. 1987).  "The court may conduct hearings or make referrals—preserving

15   any federal statutory right to a jury trial—when, to enter or effectuate judgment, it

16   needs to: (A) conduct an accounting; (B) determine the amount of damages; (C)

17   establish the truth of any allegation by evidence; or (D) investigate any other matter."

18   Fed. R. Civ. P. 55(b)(2) (paragraph breaks omitted).  "The general rule of law is that

19   upon default the factual allegations of the complaint, except those relating to the

20   amount of damages, will be taken as true." *TeleVideo*, 826 F.2d at 917–18 (citation

21   and quotation marks omitted).  Facts which are not established by the pleadings or

22   claims which are not well-pleaded, however, cannot support a default judgment. *Alan*

23   *Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988).

24         The Ninth Circuit has set forth the following factors (the "*Eitel* factors") for

25   district courts to consider in exercising their discretion as to the entry of a default

26   judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

27   substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake

28   in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether

3

the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III.   DISCUSSION

### A. <u>Procedural Requirements</u>

In the Central District of California, an application for default judgment must be accompanied by a declaration in compliance with Fed. R. Civ. P. 55(b)(1) and (2), and include the following:

(a) When and against what party the default was entered;

(b) The identification of the pleading to which default was entered;

(c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

(d) That the Servicemembers Civil Relief Act (50 U.S.C. App § 521) does not apply; and

(e) That notice has been served on the defaulting party, if required by [Fed. R. Civ. P.] 55(b)(2).

Local Rule 55-1.

Here, Plaintiff's Motion and supporting materials state: (a) default was entered against Defendant on June 15, 2023 (Docket No. 72); (b) default was entered on the operative Complaint (Docket No. 1); (c) Defendant is not a minor or incompetent person; (d) the Servicemembers Civil Relief Act does not apply to this action as Defendant is not on active duty in the military service "or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940"; and (e) notice to Defendant is not required under Local Rule 55-2 or Fed. R. Civ. P. 55(b)(2). (Kveton Decl., Docket No. 81 ¶¶ 2, 3). Accordingly, the Court finds that Plaintiff satisfied its procedural requirement under Local Rule 55-1.

4

**B. Eitel Factors**

       i. *Possibility of Prejudice to Plaintiff*

      The first factor looks to whether Plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471–72. Taking the factual allegations of the Complaint as true, Plaintiff paid hundreds of thousands of dollars to the named defendants for the purchase of nitrile gloves that Plaintiff never received. (Docket No. 1 ¶¶ 45, 83). Plaintiff will be without legal recourse if default judgment is not granted because Defendant failed to respond or otherwise participate in the lawsuit. *See e.g., PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Accordingly, this factor weighs in favor of entry of default judgment.

       ii. *Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint*[1]

      The next two factors analyze the merits of Plaintiff's claims and the sufficiency of the allegations in its Complaint. *Eitel*, 782 F.2d at 1471–72. The Ninth Circuit has suggested that these two factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). As to Defendant Zabary, Plaintiff alleges five claims for: (1) alter ego liability ("COA IV"); (2) fraud and fraud in the inducement ("COA V"); (3) negligent

---

[1] Because the Complaint alleges only California state law claims, the parties sit in diversity, and no party has invoked the law of a foreign state, the Court will apply California law. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."); *see also Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) ("By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims."), *disapproved of on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

misrepresentation ("COA VI"); (4) intentional interference with economic relations ("COA VII"); and (5) civil conspiracy ("COA VIII").[2]  On the whole, this factor weighs in favor of entering default judgment, as discussed in further detail below.

*(a) Alter Ego (COA IV)*

Under California law, alter ego liability requires two conditions to be met: "[f]irst, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 n.9 (1977)).  "Whether these elements are established is a fact-intensive inquiry, requiring the court to consider the totality of the record and circumstances." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (citing *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1112–13 (9th Cir. 1979)).

Here, Defendant is alleged to be an officer of EnCorp Switzerland, which it is alleged to have established in order to:

> thinly mask their history of fraud and current fraudulent activities in order to dupe customers into paying for badly needed medical supplies to fight the COVID-19 pandemic, without any intention to make their promised deliveries. In essence, Zabary and Solomon dominated and controlled ENCorp Switzerland to such an extent that ENCorp Switzerland's ostensible independent existence was in reality non-existent, and Zabary and Solomon are, in fact, the alter ego of ENCorp Switzerland.

(Docket No. 1 ¶¶ 11, 141).

The Complaint further alleges, "[u]nder the facts as herein alleged, adherence to the fiction of the separate existence of the entity would sanction fraud and/or promote

---

[2] The Court notes that other than the general contention that its Complaint "lays out in substantial detail the facts underpinning" its claims for each cause of action, Plaintiff failed to state why their claims against Defendant were sufficiently pled and how those claims entitle them to relief.  (Docket No. 81 at 6–7).  Nonetheless, the Court will address each cause of action in turn in order to avoid further litigation costs associated with filing another motion.

1   injustice." (*Id.* ¶ 144).  Even assuming all allegations in the Complaint as true,

2   Plaintiff has failed to sufficiently allege a claim for alter ego.  As to the first element,

3   Courts look to factors such as "one individual's ownership of all stock in a

4   corporation; use of the same office or business location; commingling of funds and

5   other assets of the individual and the corporation; an individual holding out that he is

6   personally liable for debts of the corporation; identical directors and officers; failure to

7   maintain minutes or adequate corporate records; disregard of corporate formalities;

8   absence of corporate assets and inadequate capitalization; and the use of a corporation

9   as a mere shell, instrumentality or conduit for the business of an individual." *Misik v.*

10   *D'Arco*, 197 Cal. App. 4th 1065, 1073 (2011), as modified (Aug. 9, 2011).  The Court

11   finds Plaintiff's conclusory allegations insufficient to state a claim.  *Gerritsen v.*

12   *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) ("Conclusory

13   allegations of 'alter ego' status are insufficient to state a claim.").  The Complaint is

14   completely devoid of any of the above-mentioned factors.  Likewise, Plaintiff's

15   allegations as to the second element of whether Plaintiff will suffer an inequitable

16   result if an alter ego finding are also conclusory and insufficient.  *See Orloff v.*

17   *Allman*, 819 F.2d 904, 908–09 (9th Cir.1987) ("[A] plaintiff must allege specifically

18   both of the elements of alter ego liability, as well as facts supporting each. Thus, in

19   addition to alleging facts that show a unity of interest, [Plaintiff] must also plead facts

20   demonstrating that an inequitable result will follow if an alter ego finding is not

21   made.") *abrogated on other grounds by Hollinger v. Titan Cap. Corp*., 914 F.2d 1564

22   (9th Cir. 1990).  Therefore, Plaintiff has not sufficiently pled a claim for alter ego.

*(b) Fraud and Fraud in the Inducement (COA V) and Negligent*

*Misrepresentation (COA VI)*

25          The elements of fraud in the inducement and negligent misrepresentation are

26   similar and thus will be analyzed together.  To state a claim for fraud in the

27   inducement, the plaintiff must allege "(a) a misrepresentation (false representation,

28   concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to

7

induce reliance; (d) justifiable reliance; and (e) resulting damage." *Parino v. BidRack, Inc*., 838 F. Supp 2d 900, 906 (N.D. Cal 2011) (citing *Lazar v. Super. Ct.*, 909 P.2d 981, 984 (Cal. 1996)).  Similarly, the elements of a cause of action for negligent misrepresentation consist of: (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages. *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986).  Both claims for negligent misrepresentation and fraud must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a Plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Accordingly, "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993). In addition, the "plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (*quoting In re Glenfed Inc. Secs. Litig*., 42 F.3d 1541, 1548 (9th Cir.1994)).

Here, Plaintiff alleges that Defendant, through its agents and company, misrepresented that it could fulfill Plaintiff's order for 77,000 boxes of nitrile gloves, which Plaintiff relied on to wire $860,860.00 in payment to entities related to Defendant.  (Docket No. 1 ¶ 149).  Plaintiff alleged the dates and times of the communications with Defendant's agents and company including the false and misleading communications with the company, and the purchase orders itemizing the amounts of gloves and prices.  When Plaintiff's never received its nitrile gloves, Defendant through its agents continued to make false statements and misrepresentations about the status of the order and efforts to obtain the products.  Thus, Plaintiff sufficiently alleges a claim for both fraud in the inducement and negligent inducement against Defendant.

*(c) Intentional Interference with Economic Relations (COA VII)*

The elements of a cause of action for intentional interference with prospective economic relations under California law are: (1) an economic relationship between the plaintiff and another containing a probability of future economic benefit, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) damages to the plaintiff proximately caused by the acts of the defendant. *Green Hills Software, Inc. v. Safeguard Scis. & SPC Priv. Equity Partners*, 33 F. App'x 893, 894 (9th Cir. 2002) (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 389 (1995)).

Here, Plaintiff alleges that Defendant interfered with its contractual relationship with its client Safelite when it failed to procure nitrile gloves and thereby damaged its relationship with Safelite. Further, the Complaint alleges that Defendant knew about Plaintiff's financial relationship with Safelite, which is supported by communications between Plaintiff and Defendant, in which Plaintiff informed Defendant that its failure to receive the nitrile gloves was putting Plaintiff's relationship with Safelite at risk. (Docket No. 1 ¶ 60). Despite this knowledge, Defendant continued to misrepresent the status of the order and efforts to obtain the products. Thus, Plaintiff sufficiently alleges a claim for intentional interference with economic relations against Defendant.

*(d) Civil Conspiracy (COA VIII)*

A claim for civil conspiracy consists of three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)). To establish liability for civil conspiracy under California law, the conspiring defendants must "have actual knowledge that a tort is planned," must "concur in the tortious scheme," must have "knowledge of [the scheme's] unlawful purpose," and must "inten[d] to aid in achieving the objective of the conspiracy." *Id.* at 1582 (citation omitted).

1    Here, Plaintiff fails to allege any facts to support the first element of a civil

2  conspiracy claim—the formation and operation of the conspiracy.  Specifically,

3  Plaintiff does not allege when or how the Defendant entered into a conspiracy.  *See*

4  *e.g., Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2008 WL 5000237, at *6 (N.D.

5  Cal. Nov. 21, 2008) (finding that the absence of allegations of the formation of a

6  conspiracy failed because it "contain[ed] little more than a bare allegation that the

7  conspiracy existed.").  Therefore, Plaintiff has not sufficiently pled a claim for civil

8  conspiracy.

9                      iii. *Sum of Money at Stake*

10    The fourth *Eitel* factor "examines the amount of money at stake in relation to

11  the seriousness of a defendant's conduct."  *Wecosign, Inc.*, 845 F. Supp. 2d at 1082.

12  Here, Plaintiff seeks a total award of $851,416.44.  (Docket No. 81 at 7).  This amount

13  consists of a principal amount of $674,115.00 for money Plaintiff paid for a product it

14  never received due to Defendant's conduct, plus prejudgment interest in the amount of

15  $177,301.44 ($184.6890/day as of September 15, 2023).  (*Id.*).  Notably, Plaintiff does

16  not seek any attorneys' fees and costs, although it is unclear if Plaintiff is even entitled

17  to such fees whether by contract or statute.

18    Here, the sizeable judgment amount concerns the Court.  *See e.g. Yelp Inc. v.*

19  *Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014) ("[C]ourts should be hesitant to

20  enter default judgments in matters involving large sums of money.").  A sizeable

21  judgment is permissible, however, when "the sum of money at stake is tailored to the

22  specific misconduct of the defendant, default judgment may be appropriate."  *Bd. of*

23  *Trs. v. Core Concrete Const., Inc.*, No. C 11–2532 LB, 2012 WL 380304, at *4

24  (N.D.Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472).  Plaintiff seeks the principal

25  amount of $674,115.00.  While the Court finds this amount high, it is sufficiently

26  tailored to Plaintiff's loss due to Defendant's conduct and is supported by

27  documentary evidence such as invoices and sworn declarations.  *Facebook, Inc. v.*

28  *ILikeAd Media Int'l Co. Ltd.*, No. 19-CV-07971-SK, 2022 WL 2289064, at *5 (N.D.

1   Cal. Feb. 1, 2022) (awarding Plaintiff the amount of $4,020,910, reasoning that

2   "[a]lthough this amount is large, it is tailored to remedy Defendants' specific

3   misconduct).  As to the prejudgment interest, the Court finds this amount too high and

4   not sufficiently tailored to Plaintiff's loss because it includes interest owed for a

5   significant portion of time during which Plaintiff failed to timely prosecute the instant

6   matter.  (*See* OSC, Docket No. 77).  Plaintiff only filed the instant Motion after the

7   Court issued an OSC regarding dismissal for lack of prosecution.  Nonetheless, this

8   factor weighs in favor of entry of default judgment.

9                    iv. *Possibility of a Dispute Concerning Material Facts*

10          With respect to the fourth factor—the possibility of dispute as to any material

11   facts—the Court finds that such a possibility is almost nonexistent.  As discussed

12   above, the Complaint alleges that Defendant induced Plaintiff to make hundreds of

13   thousands of dollars in prepayments in exchange for boxes of nitrile gloves that

14   Defendants never intended to deliver.  (*See generally* Docket No. 1).  Plaintiff also

15   attached detailed documentation to both its Complaint and to this Motion to support

16   the material facts as it relates to the financial loss in this case.  These facts leave little

17   room for dispute that Plaintiff was harmed and suffered a financial loss.  Accordingly,

18   this factor weighs in favor of entry of default.

19                    v. *Whether Default was Due to Excusable Neglect*

20          The sixth *Eitel* factor considers whether a defendant's failure to respond could

21   constitute excusable neglect.  This factor favors entry of default judgment where "the

22   defendant has been properly served…." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.

23   Supp. 2d 1072, 1082 (C.D. Cal. 2012).  Here, Plaintiff retained a process server and

24   properly served Defendant pursuant to the service procedure laid out in the Hague

25   Convention.  (Docket No. 64 ¶ 3).  Despite being properly served, Defendant has

26   neither made an appearance in this matter nor challenged the entry of default.

27   Accordingly, this favor weighs in favor of entry of default.

28

### vi. *Policy Favoring Decisions on Merits*

The seventh factor "takes into account the strong public policy in favor of deciding cases on the merits." *Langer v. Peykar*, No. CV 18-1919-R, 2018 WL 10072162, at *3 C.D. Cal. Aug. 22, 2018).  That said, the "mere existence" of Fed. R. Civ. P. 55(b) indicates that the "preference" for decisions on the merits is not dispositive.  *PepsiCo*, 238 F. Supp. 2d at 1178.  Thus, even though this factor always weighs against default judgment, it does not preclude entry of default judgment.

### C.  <u>Request for Judgement and Pre-Judgment Interest</u>

Because Plaintiff seeks amounts for judgment and pre-judgment interest, which are sums that are not certain, Federal Rule of Civil Procedure 55(b)(2) requires that Plaintiff seek entry of judgment by the Court rather than the clerk.

Here, Plaintiff seeks judgment amount for a principal amount of $674,115.00. This amount includes prepayments for orders minus credits for partial receipt of products and a cash refund of $25,000 from EnCorp USA.  (Decl. of Anthony Lupo ("Lupo Decl."), Docket No. 81 ¶¶ 8-13).  As this amount is supported by supporting documentation including a sworn declaration, purchase orders, and invoices indicating payment to Defendant, the Court finds this amount proper.  *See e.g., Petro-Diamond Inc., v. SCB & Assocs., LLC*, No. SACV1201893CJCANX, 2013 WL 12138724, at *4 (C.D. Cal. Sept. 18, 2013) (finding damages amount proper as it was supported by sworn declarations and data detailing dates of purchase and payments).

As to the prejudgment interest, Plaintiff seeks an amount of $177,301.44 calculated at a rate of ten percent (daily rate of $184.6890) starting from February 25, 2021, which is the date Plaintiff "received a partial shipment of gloves and credited $161,745.00 against the total amount previously wired by [Plaintiff] to EnCorp Switzerland for gloves it never received…." (Kveton Decl., Docket No. 81 ¶ 6). Plaintiff argues that it is owed prejudgment interest pursuant to Cal. Civil Code § 3289(b), which states that if a contract "does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."

12

Notably, an award of prejudgment interest is only required when provided for by contract or required by statute—otherwise, this award is completely discretionary. *See e.g. Bricklayers' Pension Tr. Fund v. Taiariol,* 671 F.2d 988, 990 (6th Cir. 1982) ("The general rule is that in the absence of a statutory provision the award of prejudgment interest is in the discretion of the court."). Plaintiff is not entitled to recover prejudgment interest in this matter because the Court is not entering judgment in its favor as to the breach of contract claims, which are not even alleged against Defendant. *See e.g., Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 1225 (C.D. Cal. 2020) (finding that prejudgment interest under Section 3287(b) did not apply to Song-Beverly Act because "the threshold question is whether Plaintiff's claim was based upon a cause of action in contract.") (internal quotations and citation omitted). Because there is no contract or statute requiring prejudgment interest be awarded in this matter and because of the delay in seeking default judgment, the Court **DENIES** this request.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Default Judgment and enters judgment in favor of Plaintiff and against Defendant as follows:

- Default judgment is **GRANTED** as to Plaintiff's causes of action for fraud and fraud in the inducement (COA V); negligent misrepresentation (COA VI); and intentional interference with economic relations (COA VII);
- Default judgment is **DENIED** without prejudice as to Plaintiff's cause of action for alter ego theory (COA IV); and civil conspiracy (COA VIII);

///
///
///
///
///

- Plaintiff is awarded a principal judgment amount of $674,115.00; and

- Plaintiff's request for prejudgment award is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated:  October 13, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE